**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5627-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

S.G.,

    Defendant-Appellant.

_____

Submitted January 16, 2020 – Decided April 30, 2020

Before Judges Alvarez and Nugent.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 15-03-0194.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen P. Hunter, Assistant Deputy Public Defender, of counsel and on the briefs).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Christopher W. Hsieh, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried to a jury, defendant S.G. was convicted of the following: first-degree aggravated sexual assault of a victim under the age of thirteen (B.C.), N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault of a victim over the age of thirteen by an actor who was four or more years older than the victim (B.C.), N.J.S.A. 2C:14-2(b) (count two); third-degree endangering, abuse, neglect, or sexual act by a non-caretaker (B.C.), N.J.S.A. 2C:24-4(a) (count three); fourth-degree sexual assault of a minor under the age of sixteen but over the age of thirteen by a defendant four or more years older than the minor (A.E.), N.J.S.A. 2C:14-2(c)(4) (count four); third-degree endangering, abuse, neglect, or sexual act by a non-caretaker (A.E.), N.J.S.A. 2C:24-4(a) (count five); fourth-degree criminal sexual contact (N.T.), N.J.S.A. 2C:14-3(b), with a victim between the ages of thirteen and fifteen, when the actor was four or more years older than the victim (N.T.), N.J.S.A. 2C:14-2(c)(4) (count six); and third-degree endangering, abuse, or sexual act by a non-caregiver (N.T.), N.J.S.A. 2C:24-4(a) (count seven).[1]

---

[1] The jury could not agree upon a verdict on count eight, second-degree sexual assault of a victim between the ages of thirteen and fifteen, when the actor was four or more years older than the victim (N.T.), N.J.S.A. 2C:14-2(c)(4). Post-trial, the State later dismissed the charge.

On June 9, 2017, the trial judge sentenced defendant to twenty-five years imprisonment without parole ineligibility on count one, the first-degree aggravated sexual assault. On the second count, he imposed a concurrent seven-year term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On count three, he imposed a concurrent term of four years. He merged counts four and five, sentencing defendant to a consecutive four-year term for those offenses. He also merged counts six and seven, imposing a four-year term on that offense consecutive to the two other terms of imprisonment. The aggregate sentence was thus thirty-three years, subject to twenty-five years of parole ineligibility. We affirm.

The charges arose from defendant's sexual conduct towards B.C., A.E., and N.T. At the time the offenses occurred in 2014, the girls were twelve, thirteen, and fourteen respectively. In each case, defendant gave the girls massages that began innocently. Defendant gave massages to the girls' parents as well. N.T.'s mother was defendant's sister-in-law. The victims' mothers were close friends and are godmothers to each other's children.

The massages defendant gave the girls progressed to the sexual conduct alleged in the indictment. It included defendant "massaging" the girls' breasts and vaginal areas, and as to N.T., the removal of her clothing. When the girls'

3

mothers discussed A.E. and B.C.'s accusations against defendant, N.T.'s mother asked N.T. if defendant had done anything like that to her. N.T. initially responded that defendant gave her "normal" massages, only later describing defendant's sexual misconduct towards her.

N.T.'s mother reported to police that when she confronted defendant about the sexual assaults, he denied the allegations. He said that the contact might have occurred because he has "big hands," and that "maybe the child thought that he might have touched her." Defendant told N.T.'s mother to tell her daughter that if she wanted, he would disappear and never come back, and that she would never see him again.

All the girls testified at trial, as did N.T.'s mother. When asked why she had not reported the sexual abuse to her mother after telling a babysitter about it, A.E. testified that she was afraid to tell her. When pressed about her silence, she said that she did not know why she kept quiet and "guess[ed]" she was afraid. She could not explain the reason she was afraid and repeated that she did not know why she did not tell her mother.

Similarly, N.T. said defendant told her that because he gave the family massages, she should view him as no different than a doctor, and that she should accept his inappropriate touching of her because he massaged her parents the

4

same way. B.C. said defendant's sexual conduct towards her made her uncomfortable, including his digital penetration of her body, but she kept quiet. B.C. gave no reason for her silence, saying she did not know why, probably because she was frightened. Once when she was watching a video, defendant told her he would buy her "press-on nails," or take her to a place to eat, but that she should not tell anyone about the massages "because they're going to think wrong of it."

The court conducted a <u>Rule</u> 104 testimonial hearing before trial, addressing both the admissibility of defendant's statements to N.T.'s mother and the admissibility of the State's expert testimony with regard to the Child Sexual Abuse Accommodation Syndrome (CSAAS). The judge ruled that he would allow the CSAAS witness, Vincent D'Urso, Psy.D., Section Chief and Supervising Psychologist at the Audrey Hepburn Children's House of Hackensack University Medical Center, to testify. Defense counsel objected to some aspects of the testimony as unduly prejudicial. The judge agreed, and at that point ruled that the testimony would be limited solely to the rehabilitation of witnesses. He said:

> [T]he rational[e] for allowing this testimony of child sex abuse accommodation syndrome is for rehabilitative aspects. And in this Court's opinion it's just by a hair that it's there because while there's a

general attack on credibility I haven't heard any cross-examination as to the issue of delay and that delay in and of itself is a reason to lack credibility.

There was a hint of it and that's why I'm allowing it. There was a hint of it in . . . the very last witness, [B.C.]. But outside of that I hadn't even seen it before, so I'm going to allow it, but as I said just . . . on a very skim basis or slim basis.

The judge also noted that the expert had to limit his use of terms such as repetitive, compulsive, and addictive, and replace it with "multi-event." The expert's testimony was relatively brief, transcribed over thirteen pages, including direct and cross-examination. The judge read the model jury charge regarding expert testimony before D'Urso testified and intended to reinstruct the jury in his closing charge. Model Jury Charge (Criminal), "Expert Testimony" (rev. Nov. 10, 2003). Through some oversight, the closing jury charge was not recorded. We have been provided, however, with a copy of the judge's proposed written closing charge with reference to CSAAS.[2]

In the written draft, the judge proposed telling the jury that because the victims "delayed in disclosing," the State had called an expert witness. The judge's proposed instruction stated that the expert's testimony could only be used

---

[2] Because the attorneys have referred without objection to the proposed charge, we assume they agree the court gave the charge as proposed.

for the limited purpose of "addressing" the children's delayed disclosures, in other words to rehabilitate a witness whose credibility was impeached. The judge further instructed that the weight the jury accorded to the expert's testimony was entirely at their discretion, and that they had the option to reject it entirely.

The judge also gave the Model Jury Charge (Criminal), "Defendant's Election not to Testify" (rev. May 4, 2009). Although it was included in the packet of charges he reviewed with counsel on the record, he did not engage in an individual colloquy with defendant to review it. It was not objected to, either when he presented the written charges to counsel for discussion before the end of the case, or presumably, when he gave it.

Defendant raises two points on appeal:

> POINT I
> THE ADMISSION OF EXPERT TESTIMONY ON CHILD SEXUAL ABUSE ACCOMMODATION SYNDROME (CSAAS) DENIED DEFENDANT A FAIR TRIAL. U.S. Const. Amend. XIV; N.J. Const. Art. I, ¶ 1.
>
> A. The Trial Court Erred in Admitting CSAAS Testimony On Aspects Other Than Delayed Disclosure Because Such Evidence Is Not Based On Reliable Science As Determined By The New Jersey Supreme Court in State v. J.L.G., [234] N.J. [265] (2018).

B. The Trial Court Erred in Admitting CSAAS Testimony On Delayed Disclosure Because All Three Girls Gave "Reasons For The Delay That Were Not Beyond The Ken Of The Average Juror." J.L.G., [234] N.J. at [306].

C. Unlike in J.L.G., The Errors Here Are Not Harmless.

POINT II
THE TRIAL COURT IMPROPERLY GAVE THE INSTRUCTION ON FAILURE TO TESTIFY WITHOUT THE DEFENDANT'S CONSENT, THEREBY DENYING HIM A FAIR TRIAL. U.S. Const. Amend. V, XIV; N.J. Const. Art. I, ¶ 1, 9, 10 (Not Raised Below).

I.

Defendant argues that under J.L.G., the CSAAS expert testimony was inadmissible because the reasons given by the victims for their delayed disclosure were not beyond the ken of the average juror. Defendant further contends the State's alleged improper expert testimony prejudiced his right to a fair trial.

J.L.G. informs that only one factor of CSAAS, delayed disclosure, enjoyed "continued scientific support." J.L.G., 234 N.J. at 272. The Court held:

> that expert testimony about CSAAS in general, and its component behaviors other than delayed disclosure, may no longer be admitted at criminal trials. Evidence about delayed disclosure can be presented if it satisfies all parts of the applicable evidence rules. See N.J.R.E. 702. In particular, the State must show that the

A-5627-16T4

> evidence is beyond the understanding of the average juror.
>
> That decision will turn on the facts of each case. . . . [I]f a child cannot offer a rational explanation, expert testimony may help the jury understand the witness's behavior.
>
> [Ibid.]

Defendant also relies on State v. G.E.P., 458 N.J. Super. 436 (App. Div.), certif. granted 239 N.J. 598 (2019), for the proposition that J.L.G. has pipeline retroactivity and thus should be applied in this case. See G.E.P., 458 N.J. Super. at 447.

Defendant asserts that admission of the expert's testimony violated the principles enunciated in J.L.G. But J.L.G. allows CSAAS testimony where necessary to explain otherwise inexplicable delayed reporting. "If a child witness cannot offer a rational explanation for the delay in disclosing abuse . . . expert evidence may be admitted to help the jury understand the child's behavior. In this context, we do not accept that jurors can interpret and understand an explanation that is not offered." 234 N.J. at 305.

We disagree with defendant's claim. The judge's explicit limitation of the jury's use of expert testimony fits within the J.L.G. decision. Two of the three victims in this case had no plausible reason for delaying reporting. They had no

rational explanation for their unspecified fear, nor, ultimately, any justification for their silence. The third victim's explanation that defendant assured her he would buy her something, but that in the interim she should not tell anyone about the things he was doing to her body because others would view it as wrong, is illogical and contextually contradictory, particularly since he also told her he did the same things to her parents when he gave them massages. The girls testified that defendant's massages made them extremely uncomfortable, yet they waited to report it. The CSAAS testimony shed light on the issue.

Like the Court said, a child's general fear of disclosure, embarrassment, bribery by defendant, or confusion as to whether an act constitutes abuse may be "beyond the ken of the average juror." Ibid. Such was the case here. Thus, the trial court's admission of the testimony falls within the exception enunciated in J.L.G.

Even if for the sake of argument, we considered the testimony to have been improperly admitted, any error was harmless. R. 2:10-2. Three victims testified about a trusted member of their extended family's similar sexual conduct taking place over the same period of months. The State's proofs were overwhelming.

II.

10

Defendant also claims that the trial judge gave the instruction regarding a defendant's decision not to testify without his consent. He asserts the court's failure to explicitly obtain his consent, in light of the instruction, deprived him of a fair trial. We do not agree.

"Criminal defendants have a constitutional right to testify on their own behalf." State v. Bey, 161 N.J. 233, 269 (1999) (citing State v. Savage, 120 N.J. 594, 626-28 (1990)). The decision to testify is a defendant's right. Ibid. Ordinarily, a jury charge for a defendant's election not to testify should not be given without request of defendant. State v. Lynch, 177 N.J. Super. 107, 114-15 (App. Div. 1981). However, instructions "given over objection do not violate defendant's constitutional right against self-incrimination." Id. at 115.

"'[C]lear and correct jury instructions are essential for a fair trial' because the jury charge 'is a road map to guide the jury, and without an appropriate charge a jury can take a wrong turn in its deliberations.'" State v. Marshall, 173 N.J. 343, 359 (2002) (quoting State v. Koskovich, 168 N.J. 448, 507 (2001)). A claim of reversible error in a jury charge not objected to will be considered where there is plain error, meaning "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the

11

error possessed a clear capacity to bring about an unjust result." State v. R.B., 183 N.J. 308, 321-22 (2005) (quoting State v. Hock, 54 N.J. 526, 538 (1969)).

Admittedly, the judge's closing charge was not recorded, so we can only assume the charge was given as per the judge's written proposed instructions. On the other hand, no objection was raised by defense counsel when the judge presented the attorney with his proposed instruction. No mention is made in either brief of defense counsel objecting when the judge charged the jury in closing.

A trial judge must give the no-adverse-inference instruction, grounded on the Fifth Amendment privilege against self-incrimination, when requested by a defendant. State v. Camacho, 218 N.J. 533, 542, 546 (2014). The alleged error relating to the charge is one which:

> concerns the evidentiary value the jury may give to a defendant's election not to testify on his or her own behalf. Therefore, it is a trial error that has an effect that may "be quantitively assessed in the context of other evidence presented in order to determine whether it was harmless beyond a reasonable doubt."
>
> [Id. at 551-52 (quoting Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991)).]

Defendant's argument seems to be that without personally reviewing the charge with defendant, the court should not have included it in his final

instruction to the jury, assuming it was included since we have no record of what actually occurred. But where defendant did not object when the judge proposed the charge, we will presume the instructions were adequate and that by silence, defendant waived the right to contest. R. 1:7-2; State v. Adams, 194 N.J. 186, 206-09 (2008); State v. Morais, 359 N.J. Super. 123, 134-35 (App. Div. 2003).

A defendant "has no constitutional right to resist the . . . instruction." State v. McNeil, 164 N.J. Super. 27, 31 (App. Div. 1978). When a defendant has no opportunity to consent to the instruction, inclusion of the charge does not deprive defendant of due process or a fair trial. Lynch, 177 N.J. Super. at 115. Thus, the judge's decision to give the instruction without directly reviewing it with defendant was not error. We do not find the judge's oversight to have deprived defendant of his right to a fair trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5627-16T4